UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
TYCO INTERNATIONAL LTD.,                :
                         Plaintiff,     :
                                        :    02 Civ. 4633 (DLC)
                                        :
            -v-                         :    OPINION & ORDER
                                        :
                                        :
FRANK E. WALSH, JR.,                    :
                         Defendant.     :
                                        :
----------------------------------------X

Appearances:

For Plaintiff:

Brian Emory Pumphrey
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219

Marshall Beil
McGuireWoods LLP
1345 Avenue of the Americas
7th Floor
New York, NY 10105

Charles William McIntyre
McGuire Woods LLP
2001 K Street N.W. Suite 400
Washington, DC 20006

For Defendant:

Michele L. Pahmer
Monica Hanna
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

DENISE COTE, District Judge:

This action, which arises from a dispute concerning a corporation's payment of a so-called "finder's fee" to its lead outside director for his role in facilitating a merger, is before this Court on remand from the United States Court of Appeals for the Second Circuit.  By Opinion and Order of October 20, 2010 (the "2010 Opinion"), following a bench trial on October 12-13, 2010, this Court denied the claims of plaintiff Tyco International, Ltd. ("Tyco") for restitution, breach of fiduciary duty, conversion, unjust enrichment, constructive trust, and inducing breach of fiduciary duty.  Tyco Int'l Ltd. v. Walsh, 751 F. Supp. 2d 606 (S.D.N.Y. 2010).  On January 11, 2012, the Second Circuit reversed and remanded for further proceedings.  Tyco Int'l Ltd. v. Walsh, 455 F. App'x 55 (2d Cir. 2012).

By motion of March 26, 2012 (the "March 26 Motion"), Tyco seeks judgment on consequential damages in the amount of $495,901.00, interest in the amount of $1,958,082.19, and attorneys' fees and costs in the amount of $2,003,497.12.  For the reasons stated below, Tyco's March 26 Motion is granted in part.

BACKGROUND

The facts of this case are fully described in the 2010
Opinion, Tyco Int'l, 751 F. Supp. 2d at 608-18, familiarity with
which is presumed.  The facts relevant to the issues remanded
are summarized here.

I.   The Acquisition of CIT and the Walsh Payment

Plaintiff Tyco is a Bermuda corporation engaged in
manufacturing and services.  Defendant Walsh served on Tyco's
Board of Directors (the "Board") from 1992 to 2002, and was
appointed Lead Director in January 2001.

After Walsh became aware that Tyco was interested in
acquiring a financial services company in late 2000, Walsh
suggested that Tyco consider acquiring CIT Group, Inc. ("CIT").
Walsh then arranged for a meeting between Tyco's then-CEO L.
Dennis Kozlowski ("Kozlowski") and CIT's former Chief Executive
Albert Gamper, Jr. ("Gamper"), whom Walsh knew.  After this
meeting, Walsh and Kozlowski discussed the possibility that
Walsh would be paid a "finder's fee" for his services if Tyco
succeeded in acquiring CIT.

Walsh did not discuss his expectation of a fee during
discussions of the CIT transaction with Tyco's other directors.
At a March 12, 2001 meeting in Bermuda, the Board unanimously
approved the merger.  During this meeting, Kozlowski did not

inform the Board that any compensation was owed or would be paid
to Walsh.  Walsh was not present at the meeting.

On March 29, 2001, Walsh, in his capacity as a director of
Tyco, signed a registration statement on Form S-4 that Tyco
filed with the Securities and Exchange Commission ("SEC").  This
registration statement incorporated by reference the Agreement
and Plan of Merger for Tyco's acquisition of CIT, in which Tyco
represented that, with the exception of the investment bankers
Lehman Brothers and Goldman, Sachs & Co., "there is no
investment banker, broker, finder or other intermediary that has
been retained by or is authorized to act on behalf of [Tyco] who
might be entitled to any fee or commission from [Tyco] . . . in
connection with the transactions contemplated by this
Agreement."

During June and July 2001, after the closing of the CIT
transaction, Walsh and Kozlowski further discussed Walsh's
finder's fee.  In July, Kozlowski advised Walsh not to discuss
the fee with anyone other than himself and Tyco's then-Chief
Financial Officer, Mark Swartz ("Swartz").  Eventually Walsh and
Kozlowski agreed that $10 million would be paid to Walsh
directly and $10 million would be paid to a charity of Walsh's
choosing.  Walsh designated the Community Foundation of New
Jersey as the charity (the "Community Foundation"), and later
advised the Community Foundation on its investment and

4

distribution of the payment.  Walsh did not inform the Board of the fee during its discussions of the CIT transaction at a Board meeting in October 2001.

On December 21, 2001, Walsh filled out a Directors' and Officers' Questionnaire ("D & O Questionnaire") in which he disclosed his receipt of the $10 million fee and Tyco's contribution of $10 million to the Community Foundation at his request.  Walsh's disclosure of the $20 million payment in the D & O Questionnaire led, eventually, to the disclosure of the payment to the Board and to the public.  The Board first discussed the payment at a January 16, 2002 Board huddle.  During the Board huddle, the Board asked Walsh to return the payment and told him that if he refused, he would not be renominated to the Board.  Walsh refused to return the payment and walked out of the meeting.

II.  Tyco's Defense of the Walsh Payment

Tyco disclosed to the public the $20 million payment in a January 28, 2002 proxy statement.  The proxy statement stated that Walsh "was instrumental in bringing about" the CIT acquisition, and that Tyco paid him $10 million "[f]or his services" and contributed $10 million to the Community Foundation.

Following this disclosure, the press and corporate-governance experts were severely critical of the payment to

Walsh.  In a number of public statements, however, Tyco defended the payment.  In a January 29 article in the <u>Wall Street Journal</u>, for example, Tyco spokeswoman Maryanne Kane was quoted as saying that Tyco's Board had decided the Walsh payment was "appropriate based on the amount of work" that Walsh had done. Similarly, a vetted and edited January 29 Tyco statement quoted Kozlowski as saying that the payment had been "fully disclosed" in Tyco's proxy statement, that the payment was made because Walsh was "instrumental in bringing about" the acquisition of CIT, and "[t]he Board felt that [the] fee was appropriate in light of Mr. Walsh's efforts."

A number of Board members recall being unhappy with this press coverage of the Walsh payment.  In a telephone conversation among former Tyco Chief Counsel Mark Belnick ("Belnick") and a number of directors, certain directors expressed "great displeasure" at Tyco's press statements.  When Belnick articulated his understanding that the Board had "ratified" or "approved" the Walsh payment, however, no director corrected him.  And when Belnick explained the Board's options, Richard Bodman ("Bodman"), a Tyco director, expressed his feeling that "it was a fait accompli, what else could we do."

In February, Belnick spoke on the telephone with Joshua Berman ("Berman"), another Tyco director, regarding the Walsh payment.  Belnick explained that he thought the only reasonable

interpretation of the January 28 proxy statement was that the
Board had in fact approved the payment.  Berman denied that that
was what the disclosure meant, however, and stated that he was
"trying to steer a middle course" in which "the Board just
doesn't ratify, doesn't not ratify."

On February 11, with Tyco's approval, Walsh released a
statement defending the payment to the Wall Street Journal.  In
a February 11 article in Barron's, Kozlowski was quoted as
stating that the Walsh payment was "inappropriate," and noting,
"After the situation arose, the board unanimously voted to
change our bylaws so such a situation would never again arise."

That same month, Belnick requested that Tyco's outside
counsel Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer
Cutler") prepare a chronology describing Tyco's handling of the
Walsh payment.  On February 19, Meredith Cross at Wilmer Cutler
sent an email to Belnick attaching the chronology and stating
that the "attached chronology shows that various news sources
and the SEC believe that the Tyco board approved the Walsh
payment."  Belnick subsequently reviewed and revised the
chronology.

At a February 20 board meeting, the Board discussed a
shareholder demand letter regarding the Walsh payment, referred
the matter to its Corporate Governance Committee, and passed a
resolution amending its Bye-Laws.  The amendment disallowed

directors from receiving certain kinds of fees like the Walsh
payment.

During this period, Tyco received a number of letters from
shareholders indicating their disapproval of the Walsh payment.
In his response to one such letter, dated March 19, Swartz did
not indicate that Tyco was seeking to recover the Walsh payment
and instead discussed how Walsh had facilitated the CIT
transaction.

On April 2, Tyco responded to an SEC inquiry requesting
that Tyco address the factors that the Board considered in
arriving at the amount of the Walsh payment.  Tyco's response
did not indicate whether the Board had taken a position on the
payment, and simply listed the factors that Kozlowski had
considered in determining the amount of the payment.  Tyco also
stated that it did not initially disclose the payment because
"we believe that $20 million is not material to our Consolidated
Financial Statements."

III. Retention of Boies Schiller

On April 29, the Corporate Governance Committee decided to
recommend to the Board that it take action to recover the Walsh
payment.  Shortly thereafter, the Committee retained the law
firm Boies Schiller & Flexner LLP ("Boies Schiller") to
investigate the Walsh payment and make appropriate corporate
governance recommendations.  The May 17 Bois Schiller retention

8

letter gave the firm a broad mandate, stating that Tyco retained the firm "in connection with the Committee's review and analysis of transactions between and among Tyco and its subsidiaries and certain of Tyco's directors and officers, and any litigation arising from or relating to that review and analysis . . . ."

Although Belnick initially advised Boies Schiller that Tyco did not believe that a lawsuit by Tyco against Walsh "was in the company's best interest," Tyco's position changed in June, after the Board and Boies Schiller learned, on June 1, that Kozlowski was being criminally investigated, and Kozlowski resigned on June 3.  The Board subsequently asked Boies Schiller to recommend whether litigation should be pursued to recover the Walsh payment.

IV.  Criminal Proceedings

On December 17, 2002, Walsh pleaded guilty in New York State court to a violation of General Business Law § 352(c)(6). Walsh allocuted that at the time the Board was considering the acquisition of CIT and preparing to vote on the transaction, he "intentionally did not disclose to any of the members of the Board, other than Kozlowski and Swartz, that [he] stood to receive a substantial fee if the transaction was approved."  He also stated to the court that

> following the Board's approval [of the CIT merger], a
> securities filing was done by Tyco in which the
> company omitted to disclose that I was to get a fee.

> That made the filing false.  Thereafter, I reached an
> agreement with L. Dennis Kozlowski that I would
> receive a ten million dollar fee for my services, and
> Tyco would further contribute ten million dollars to a
> charity recommended by me.

Pursuant to the terms of a plea agreement, Walsh paid Tyco

restitution of $20 million on December 17, 2002.

V.   Procedural History

Tyco filed its complaint in this action on June 17,

2002, asserting claims for restitution, breach of fiduciary

duty, conversion, unjust enrichment, constructive trust,

and inducing breach of fiduciary duty.  Tyco sought

recovery of interest on the Walsh payment, consequential

and punitive damages, and attorneys' fees and costs.  The

action was pending for many years before the District Court

for the District of New Hampshire as part of multi-district

litigation.  On April 1, 2010, it was transferred to this

Court.  A bench trial was held October 12-13, 2010,

followed by the 2010 Opinion.

The 2010 Opinion determined, inter alia, that Bermuda

substantive law governs Tyco's breach of fiduciary duty

claim against Walsh and that, under Bermuda law, Walsh

breached his fiduciary duty to Tyco by failing to disclose

and seek Board approval for the $20 million payment.  See

Tyco Int'l, 751 F. Supp. 2d at 621.  The 2010 Opinion

denied Tyco's claims, however, on the grounds that Tyco's

10

Bye-Laws permitted the directors to approve a grant of special compensation to a director, that failure to secure board approval in advance of paying such compensation could be cured by later Board approval, and that the Board had impliedly ratified the Walsh payment through its press releases, SEC filings, and initial failure to take action to recover the $20 million.  See id. at 622-24.

The 2010 Opinion also discussed certain rulings that "would have been made" on damages "had Tyco prevailed on any of its claims."  Id. at 627.  The Opinion concluded that, had Tyco prevailed, it would have been awarded interest on the $20 million payment from the time of its receipt by Walsh on June 19, 2001 to the time of its repayment to Tyco on December 17, 2002 at a rate of 7%, or $1,958,082.19, as well as "an award of attorney's fees under Bermuda law, subject to the Court's discretion."  Id. at 627.

The 2010 Opinion did not address whether, if Tyco had prevailed, it would have been entitled to consequential damages due to its retention of Boies Schiller.  The Opinion noted, however, that Boies Schiller's representation of Tyco during May "was entirely related to its investigation into the $20 million payment to Walsh," that Boies Schiller expanded the scope of its representation of Tyco on June 1, and that Boies Schiller

11

estimated its legal fees attributable to the Walsh investigation for May and June 2002 at $495,901.  This figure represented the sum of a $250,000 retainer fee, fees of $193,198 for work in May, and conservatively five percent of the June 2002 fees, equaling $52,703.

The Second Circuit reversed and remanded on January 11, 2012, concluding in its Summary Order that, "We need not here decide whether Walsh's breach of fiduciary duty claim was capable of ratification because, even if we were to resolve that issue in Walsh's favor, we conclude that, under Bermuda law, Walsh's breach could be ratified only by Tyco's shareholders, not its board of directors."  Tyco Int'l, 455 Fed. Appx. at 56. The Summary Order further noted as follows:

> The District Court resolved the principal damages issues in the event that Tyco prevailed on appeal. Neither party contests the District Court's resolution of damages, and we need not further address it.  The parties dispute only whether the District Court determined that it would award consequential damages to Tyco relating to its retention of Boies, Schiller & Flexner LLP.  We leave this question for the District Court to address on remand.

Id. at 58.

The mandate issued on February 6 and the case was reopened before this Court by Order of February 7.  Tyco's March 26 Motion sought $495,901.00 in consequential damages related to the retention of Boise Schiller, interest in the amount of $1,958,082.19, and attorneys' fees and costs in the amount of

$2,003,497.12, representing a total damages award of 4,457,480.31.  The March 26 Motion became fully submitted on May 14.

DISCUSSION

The March 26 Motion is granted in full with respect to Tyco's requests for consequential damages and interest; it is granted in part with respect to Tyco's request for attorneys' fees and costs.  Tyco is entitled to consequential damages because, under Bermuda law, the Boies Schiller fees constituted consequential damages arising directly as a result of Walsh's breach of fiduciary duty.  Tyco is entitled to interest on the Walsh payment and attorneys' fees under the terms of the mandate and the 2010 Opinion.  And as per this Court's discretion pursuant to Bermuda law, Tyco will be awarded $1,204,920 in attorneys' fees plus certain disbursements.

I.   Consequential Damages

The Second Circuit left open the question of whether this Court would award consequential damages to Tyco relating to its retention of Boies Schiller, to be addressed on remand.  Under Bermuda law, a successful plaintiff in a breach of fiduciary case "is entitled to be placed in the position he was before the breach occurred."  Nationwide Bldg. Soc'y v Balmer Radmore (a firm) [1999] EWHC 844 (Ch), at 44.  The costs of investigating a

13

defendant's unlawful behavior may be treated "as part of the consequential loss caused by the tort." Nat'l Grid Elec. Transmission PLC v McKenzie [2009] EWHC 1817 (Ch), at 39.

Here, there can be no question that the Boies Schiller fees attributable to its investigation into the circumstances surrounding the $20 million payment are part of the consequential loss caused by Walsh's breach. The circumstances surrounding this payment included, in substantial part, Walsh's failure timely to disclose his interest in the CIT transaction. Had Walsh disclosed this interest as he was obliged to do, then the Board would have known about it prior to voting on the CIT acquisition, could have evaluated both the acquisition and the payment itself with Walsh's disclosures in mind, and could at the very least have disclosed the payment in its March 29, 2001 registration statement. Regardless, the Board would have known substantially more about the circumstances surrounding any payment to Walsh without an investigation. In short, it is axiomatic that had Walsh disclosed his interest in the acquisition of CIT as he was obliged to do, then an investigation centered largely on Walsh's failure to disclose would have been unnecessary.

Boies Schiller calculated the fees attributable to its investigation into the circumstances surrounding the Walsh payment at $495,901.00. The parties did not contest this

14

estimate on appeal or on remand, and a review of the relevant documentation reveals it to be well-supported.  Accordingly, Tyco is entitled to $495,901.00 in consequential damages due to the retention of Boies Schiller.

Walsh does not contest that Bermuda law permits recovery of consequential damages for the costs of an investigation into the circumstances surrounding a breach of fiduciary duty.  Instead, Walsh argues that the Boies Schiller fees were incurred as a result of the Walsh payment, not Walsh's initial non-disclosure. According to Walsh, Tyco cannot recover these fees because the Second Circuit did not reverse this Court's determination that the Board ratified the Walsh payment, and because Boies Schiller would not have been retained to investigate the $20 million payment if Kozlowski had not decided to go forward with the payment.

Walsh's argument is misplaced.  First, the Second Circuit did not reach the question of whether the Board ratified the Walsh payment because it determined that, regardless, the Board could not ratify Walsh's breach of fiduciary duty and Tyco was therefore entitled to damages.  Second, as discussed above, the Boies Schiller fees are directly attributable to Walsh's breach of fiduciary duty.  This remains true even if the Board ratified the Walsh payment after the fact.

II.  Interest

Tyco is entitled to $1,958,082.19 in interest on the Walsh payment because this issue was already determined in the 2010 Opinion and is not currently before the Court on remand.  Under the mandate rule, which governs the relationship between trial courts and appellate courts, "where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006) (citation omitted).  The district court must comply with "the dictates of the superior court" on remand, and "relitigation of issues explicitly or impliedly decided by the appellate court" is foreclosed.  United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001) (citation omitted).  In cases where "an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." Id.  In determining whether an issue may be reconsidered on remand, "the trial court should look to both the specific dictates of the remand order as well as the broader spirit of the mandate."  Id. (citation omitted).

The 2010 Opinion concluded that Tyco would have been awarded $1,958,082.19 in interest "had Tyco prevailed on any of its claims."  Tyco Int'l, 751 F. Supp. 2d at 627 (emphasis

16

supplied).  After reversing the 2010 Opinion on the issue of
Walsh's liability, the Second Circuit noted, "The District Court
resolved the principal damages issues in the event that Tyco
prevailed on appeal," and, "Neither party contests the District
Court's resolution of damages."  Tyco Int'l, 455 Fed. Appx. at
58.

The mandate cannot reasonably be construed as permitting
this Court to reopen the issue of Tyco's entitlement to
$1,958,082.19 in interest on the Walsh payment.  This Court's
initial determinations on this issue were, at the very least,
confirmed implicitly by the Second Circuit on appeal.

Walsh argues that the mandate left open the question of
Tyco's entitlement to interest on the Walsh payment because it
addressed only the narrow question of whether Tyco's Board could
ratify Walsh's breach of fiduciary duty, and because the Board's
ratification of the $20 million payment severs any causal
connection between Walsh's breach of fiduciary duty and his
retention of the funds.  Walsh is incorrect.  The mandate did
not only address the question of ratification of Walsh's breach.
It also discussed damages, noting explicitly that "[t]he
District Court resolved the principal damages issues in the
event that Tyco prevailed on appeal," and that "[n]either party
contests the District Court's resolution of damages."  Id.
Clearly, this Court's findings on damages due to interest on the

17

Walsh payment is one of the "principal damages issues" that the Second Circuit determined had already been decided.

Walsh notes that the Second Circuit stated only that the "principal" damages issues had been decided, not that <u>all</u> damages issues had been decided, and argues that the issue of damages due to interest on the Walsh payment therefore remains open.  The Second Circuit declined to state that all damages issues had been decided, however, for the simple reason that the 2010 Opinion did not determine all damages issues.  It left open the question of whether Tyco was entitled to recover the Boies Schiller fees, as discussed above, and the amount that Tyco could recover in attorneys' fees and costs.  This single statement by the Second Circuit does not imply that Walsh can relitigate those damages issues, like the amount Tyco would recover in interest on the Walsh payment if Tyco prevailed on its claims, that the 2010 Opinion <u>did</u> decide.

III. Attorneys' Fees

In accordance with this Court's discretion to determine attorneys' fees under Bermuda law, Tyco is awarded $1,204,920 in attorneys' fees and an additional amount in costs.  The 2010 Opinion determined that Bermuda law applies to this issue and that Tyco "would be entitled to an award of attorneys' fees" under Bermuda law if it prevailed on any of its claims.  The

18

Second Circuit remanded only the question of the amount of
attorneys' fees to which Tyco is entitled.

Bermuda law customarily awards attorneys' fees to the
prevailing party, but the court retains "wide discretion" in
determining whether such an award is appropriate under the
circumstances of each case.  See In re Tyson, 433 B.R. 68, 96
n.50 (S.D.N.Y. 2010).  Only fees that are both reasonable and
necessary are recoverable.  Golar LNG Ltd. v. World Nordic SE
[2012] SC Bda 2 Com 7.  Although "all the relevant
circumstances" are to be considered as part of a court's fee
determination, factors of particular relevance include:

1. The complexity of the case and the difficulty or novelty
   of the questions involved;

2. The skill of the attorney and the time and labor expended
   by him or her;

3. The documents prepared or perused;

4. The place and circumstances in which the relevant
   business was transacted;

5. The importance of the matter to the client; and

6. The amount of money at issue.

Francis v. Carruthers [2006] SC Bda L.R. 60, 3.

Tyco's claimed fees and costs of $2,003,497.12 are
substantial, particularly in comparison to its recovery of
$2,453,983.19 in damages.  The fees are divided between two law
firms.  Bartlit Beck Herman Palenchar & Scott LLP ("Bartlit

Beck") represented Tyco at trial and pursuant to a retainer
agreement charged Tyco $240,000 per month for trial preparation,
$27,500 per day during trial, and $75,000 per quarter
thereafter.  It charged $804,920 for its pretrial and trial
work, and another $300,000 during the appellate phase.  Its
total disbursements amounted to $148,776.15.  Tyco's appellate
counsel was Gibson, Dunn & Crutcher LLP ("Gibson Dunn").  It
charged Tyco $751,092.50 in attorneys' fees and $40,882.47 for
disbursements.  Tyco's fee expert opines that $42,174 should be
subtracted from the fees, resulting in a proposed award of
$708,918.50 to Tyco for Gibson Dunn's fees.

     The fees must be understood in the appropriate context.
First, Walsh has asserted an indemnification proceeding against
Tyco in New York State court in connection with nationwide
securities class action and opt-out lawsuits.  See Fed. Ins. Co.
v. Tyco Int'l Ltd., No. 600507-03 (N.Y. Sup. Ct.).  The
fiduciary claims at issue in the instant litigation may
substantially impact this pending indemnification proceeding.
The $2,453,983.19 recovery by Tyco in this action therefore does
not reflect its full importance to Tyco.  Second, a figure in
excess of $1 million in fees for two years of complex and
diligent litigation, which included a full bench trial, an
appeal to the Second Circuit, and a motion for damages on
remand, is not surprising.  Third, Tyco hired a distinguished

appellate litigator to argue its appeal, which it won.  Finally,
Tyco's claims on appeal principally involved a complex issue of
English and Bermuda law concerning ratification.  Accordingly,
Tyco is awarded all of the attorneys' fees it sought for the
pretrial and trial phases of this litigation, totaling $804,920;
an award of $400,000 for its fees on appeal; all disbursements
charged by Gibson Dunn, totaling $40,882.47; and all
disbursements requested by Bartlit Beck, except for those
associated with New York hotel lodging expenses and airfare to
travel to New York.

        Tyco is not entitled to recover all of its requested fees
because not all of these fees are reasonable and necessary.
More than half of Tyco's fees were incurred during the appellate
phase of litigation, after the completion of discovery and a
bench trial.  Whereas trial counsel incurred fees of $804,920,
the fees on appeal totaled $1,051,092.50.  Tyco could have
retained competent, well-respected appellate counsel for this
appeal for roughly $400,000.  Certainly, Tyco had the right to
incur over $1 million in appellate fees, but it is neither fair
nor reasonable to impose upon Walsh the duty to pay that amount.
In light of all the relevant circumstances, these fees on appeal
are not reasonable.  There were no remaining factual disputes
during the appellate phase that might have required a careful,
diligent, and time-consuming analysis of the documentary record.

The trial itself consumed two days.  The 2010 Opinion was 54 pages long and explained the Court's analysis in detail.  And the core legal question at issue -- whether the Board could ratify Walsh's breach of fiduciary duty under Bermuda law -- was a narrow one.  In addition, given the availability of competent local counsel in New York City, it was not necessary for Tyco to retain trial counsel outside of New York and not reasonable for it to seek payment of costs associated with travel to New York and hotel lodging expenses in New York from Walsh.

Walsh presents a number of other arguments for why attorneys' fees are inappropriate in this case, none of which have merit.  Walsh argues that the Summary Order did not remand the issue of attorneys' fees.  The Summary Order noted that "[t]he District Court resolved the principal damages issues in the event that Tyco prevailed on appeal," and that neither party contested these determinations on appeal.  Tyco Int'l, 455 F. App'x at 58.  The 2010 Opinion resolved that Tyco is entitled to attorneys' fees but did not specify the amount.  The issue of whether Tyco is entitled to attorneys fees is therefore not open to relitigation pursuant to the mandate rule, see United States v. Ben Zvi, 242 F.3d at 95, but the issue of the amount of fees to be recovered is properly before this Court.

Walsh maintains that New York law should apply to the question of attorneys' fees because it is an issue of court

administration and procedure.  This issue was addressed in the 2010 Opinion, see Tyco Int'l, 751 F. Supp. 2d at 627, was not contested on appeal, see Tyco Int'l, 455 F. App'x at 58, and is therefore not open to relitigation.

Next, Walsh argues that an award of fees is inappropriate on remand because Walsh was not awarded fees when he prevailed in the 2010 Opinion.  Unlike Tyco, however, Walsh did not seek attorneys' fees.  His failure to recover fees therefore has no bearing on whether Tyco is entitled to them.

Finally, Walsh argues that the particular facts of this case do not warrant an award of fees because Walsh prevailed on the issue of the Board's ratification of the $20 million payment, because Tyco is undeserving of recovery, because Tyco did not prevail on its claims for punitive damages, and because Walsh repaid the $20 million ten years ago.  These arguments ignore the fact that Walsh has been found liable for breach of fiduciary duty under Bermuda law, and Tyco is therefore the prevailing party and entitled to attorneys' fees.

Walsh also argues that Tyco's attorneys engaged in overzealous representation and that their fees are therefore not necessary and reasonable under Bermuda law.  Specifically, Walsh argues that the fees are disproportionate to Tyco's recovery, and that the use of multiple firms, fixed fee billing by trial counsel, retention of a Bermuda law firm, extensive travel, and

certain unsubstantiated expenses were unnecessary and excessive. As discussed above, however, a review of Tyco's expenses as detailed by supporting documentation reveals that most of them were reasonable and necessary, although some of them were not. Accordingly, Tyco is awarded those fees and costs, and only those fees and costs, that were reasonable and necessary.

## CONCLUSION

Tyco's March 26, 2012 motion for judgment on consequential damages, interest, and attorneys' fees is granted in part.  Tyco is awarded $495,901.00 in consequential damages; $1,958,082.19 in interest on the Walsh payment; and attorneys' fees totaling $1,204,920.00 plus all disbursement expenses incurred by Gibson Dunn and those incurred by Bartlit Beck except for those associated with New York hotel lodging expenses and airfare. Tyco shall submit a proposed judgment by June 25, 2012.


    SO ORDERED:

Dated:    New York, New York
          June 20, 2012


                          _____
                                    DENISE COTE
                          United States District Judge